Filed 12/13/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LUIS ARMANDO CARATACHEA,<br><br>Defendant and Appellant. | D082799<br><br><br><br>(Super. Ct. No. SCN425854) |

APPEAL from a judgment of the Superior Court of San Diego County, Anthony J. Campagna, Judge. Affirmed in part, remanded for resentencing.

David M. McKinney, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Luis Armando Caratachea of multiple sexual offenses against four victims. One of the victims testified about certain of the charged crimes as well as an uncharged sexual offense he allegedly committed against her in Mexico. Caratachea conceded that the testimony about the uncharged offense was admissible and requested the court instruct the jurors about the proper use of it. The court admitted the testimony and read the requested instruction without conducting any analysis under Evidence Code section 352.[1]

Caratachea now claims the court erred because it failed to perform any section 352 analysis. He reads section 1108, which authorizes admission of this testimony, as imposing a sua sponte duty on the trial court to consider section 352 before admitting the testimony. In his view, the Supreme Court's decision in *People v. Villatoro* (2012) 54 Cal.4th 1152 (*Villatoro*) requires a similar section 352 examination before reading the corresponding propensity instruction, at least where no such analysis has already been performed in deciding to admit the evidence. To the contrary, however, we conclude that neither section 1108 nor *Villatoro* required the court to conduct a sua sponte section 352 inquiry on the facts of this case.

The parties jointly request a remand for resentencing on some of Caratachea's convictions for which consecutive terms were imposed because the trial court mistakenly believed it lacked discretion to consider concurrent sentences. We agree that a remand is appropriate. Accordingly, we vacate the sentences on these convictions and remand for resentencing.

---

[1] All subsequent undesignated statutory references are to the Evidence Code.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2023, Caratachea was convicted by jury of 52 felony sexual offenses committed against four of his step-granddaughters when they were minors under 14 years old. The majority of the charges involved Y.M. as the victim. In two counts, Caratachea forced her to orally copulate him (Pen. Code, former § 288a, subd. (c)(2)[2], counts 1 & 2); in another, he orally copulated her (*id.*, former § 288a, subd. (c)(1), count 3). In addition, he was convicted of 49 counts of committing lewd acts in violation of Penal Code section 288, subdivision (a), including one count involving Lilly F. (count 58).[3] The jury also found true multiple victim allegations attached to counts 1 and 2 and the lewd act counts. (*Id.*, § 667.61, subds. (b), (c), & (e).)

Before trial, the People disclosed that they intended to offer testimony from Lilly about an uncharged sexual offense Caratachea allegedly committed against her while they were in Mexico (the Mexico incident).[4] Caratachea did not move to exclude Lilly's testimony about the Mexico

---

[2] Penal Code former section 288a was renumbered to Penal Code section 287 effective January 1, 2019. (Stats. 2018, ch. 423 (Sen. Bill No. 1494) § 49.) The offenses in counts 1 through 3 were committed between 2016 and 2018.

[3] The other counts Caratachea was convicted included 20 involving Y.M. (counts 4–23), 16 involving J.M. (counts 28–37, 40–45), and 12 involving L.F. (counts 46–57). We will refer to all 49 Penal Code section 288, subdivision (a) counts collectively as "lewd act" counts or convictions.
 To further protect the privacy of victim Lilly F., we will refer to her as "Lilly" throughout this opinion. (Cal. Rules of Court, rule 8.90(b).)

[4] Although character evidence of this nature, sometimes called "propensity evidence," is generally inadmissible to prove conduct on a specified occasion (§ 1101, subd. (a)), one exception to this rule is that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108, subd. (a).)

incident.  Recognizing that "[s]ection 1108 may well make this evidence admissible," he requested that the court instruct the jury that they could not convict based solely on that testimony.  Defense counsel explained during the motion hearing that he was "simply asking that the jury be admonished . . . at the time the evidence is admitted and during jury instructions that they cannot convict for conduct outside of the United States."  He also "offered to find the CALCRIM for 1108 and modify it to the extent necessary[.]"  The prosecutor  proposed CALCRIM No. 1191A, which instructs jurors on the proper uses of evidence of an uncharged sexual offense.  Caratachea's counsel did not mention section 352 when discussing either the admissibility of Lilly's testimony about the Mexico incident or the propriety of reading CALCRIM No. 1191A.  The court granted Caratachea's motion without commenting on the admissibility of Lilly's testimony or discussing section 352 in connection with the jury instruction.

During trial, each victim testified about the charged conduct.  Lilly also testified about the Mexico incident.  Caratachea neither objected nor requested a jury instruction be given at that time.  During the jury instruction conference, the parties and the court discussed CALCRIM No. 1191A at length, and no one suggested that a section 352 analysis was required before it was read to the jury.  The court read a version of CALCRIM No. 1191A to the jury that contained modifications Caratachea agreed were appropriate.

When sentencing Caratachea, the trial court stated that consecutive sentences were required on counts 1 and 2 and the 49 lewd act counts.  The parties and the probation officer agreed.  The court imposed the middle term of six years on count 3 plus an indeterminate term of 785 years to life on the

4

other counts comprised of consecutive sentences of 25 years to life on each of counts 1 and 2 and 15 years to life on each of the 49 lewd act counts.

## DISCUSSION

**A.** ***The trial court did not err by admitting Lilly's testimony or by reading CALCRIM No. 1191A without first engaging in a sua sponte section 352 analysis.***

Caratachea claims the trial court erred because it failed to conduct a sua sponte section 352 analysis either before (1) admitting Lilly's testimony about the Mexico incident, and/or (2) reading CALCRIM No. 1191A to the jury. The People counter that Caratachea forfeited these claims and that any error was harmless.

Section 1108 provides that where a defendant is being prosecuted for a sexual offense, "evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."[5] (§ 1108, subd. (a).) At issue in this appeal is the significance of the last clause of section 1108, subdivision (a). According to Caratachea, the specific mention of section 352 imposed a sua sponte duty on the court to conduct this analysis before admitting Lilly's testimony about the Mexico incident. Beyond that, if section 1108 imposes no sua sponte duty to conduct a section 352 analysis before *admitting* the evidence, he maintains that the court must conduct such an analysis before CALCRIM No. 1191A was read to the jury. Because the record does not

---

[5]     Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create the substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

5

reflect that this analysis was performed at either step, Caratachea claims the court committed reversible error.

As to his claim that the court erred by not analyzing Lilly's testimony under section 352 before admitting it, we start with the well-settled principle that a trial court "has no sua sponte duty to exclude evidence." (*People v. Freeman* (1994) 8 Cal.4th 450, 490; accord § 353 [objection required to preserve appeal of erroneous admission of evidence].) It follows, then, that there is no "sua sponte duty to conduct an independent" section 352 analysis of proffered evidence where there has been no request to exclude it. (*People v. Cain* (1995) 10 Cal.4th 1, 28.) Rather, the burden of parsing proffered evidence to determine whether it falls within an exclusionary rule is "place[d] squarely on counsel, where, for a variety of well-tested reasons, it must generally remain." (*People v. Viray* (2005) 134 Cal.App.4th 1186, 1209.)

The significance of section 1108, subdivision (a)'s mention of section 352 was addressed by the Supreme Court in *People v. Villatoro* (2012) 54 Cal.4th 1152, where the primary issue was whether section 1108 permitted the jury to consider evidence of other *charged* sexual offenses as propensity evidence. (*Villatoro*, at pp. 1159–1168.) The majority opinion held that section 1108 extended to both charged and uncharged offenses. In the course of reaching that conclusion, the court explained, "Rather than imposing an additional hurdle to the admissibility of character evidence, . . . the inclusion of section 352 merely makes 'explicit' the point that section 1108 does not supersede section 352 or other provisions of the Evidence Code. In other words, even if section 1108 did not refer to section 352, the latter still serves as a limitation on the admission of all evidence." (*Villatoro*, at p. 1163, italics omitted.) The court also observed that section 1108 was enacted to "put[ ] evidence of similar sexual offenses 'on the same footing as other types of

6

relevant evidence not subject to a special exclusionary rule.' " (*Ibid.*, quoting Assem. Com. on Public Safety, 3d reading analysis of Assem. Bill No. 882 (1995–1996 Reg. Sess.) as amended May 15, 1995, p. 2.) Thus, the rule that courts have no sua sponte responsibility to conduct a section 352 analysis applies even when the proffered evidence is of other sexual offenses.

Having concluded that Caratachea's first claim fails, we now turn to his jury instruction claim. Relying primarily on Justice Corrigan's concurring and dissenting opinion in *Villatoro*, he seeks to read the *Villatoro* majority as "requiring a trial judge to engage in a section 352 analysis, sua sponte, before deciding whether to instruct with CALCRIM No. 1191B."[6] He goes on to assert that this rationale applies equally to CALCRIM No. 1191A, the instruction that was modified and read in this case.

Whatever inferences may or may not be drawn from a comparison of the majority and dissenting opinions in *Villatoro*, that case arises in an entirely different factual context from this case. The other sexual offenses at issue in *Villatoro* were *charged* offenses. (*Villatoro*, *supra*, 54 Cal.4th at p. 1156.) Evidence of their commission could not be excluded, as would be true in a case where the prosecution sought to introduce evidence of *uncharged* sexual offenses under section 1108 and a section 352 analysis indicated that the prejudicial effect outweighed the probative value.

Having failed in his primary argument—that section 1108 did not apply to charged offenses—the defendant in *Villatoro* asserted that the trial

---

[6]  When *Villatoro* was decided, the only propensity jury instruction that addressed section 1108 evidence was CALCRIM No. 1191, and it only addressed uncharged offenses. (*Villatoro*, *supra*, 54 Cal.4th at pp. 1167–1168.) Then-CALCRIM No. 1191 was modified by the trial court in *Villatoro* to be similar to today's CALCRIM No. 1191B, which is the propensity instruction that addresses charged sexual offenses. (*People v. Ellis* (2024) 105 Cal.App.5th 536, 543–544 (*Ellis*).)

court failed to conduct a proper section 352 analysis before instructing the jury on the use of the other charged offenses as propensity evidence. (*Villatoro*, *supra*, 54 Cal.4th at p. 1168.) The majority opinion rejected this challenge by finding that the court "implicitly conducted" such an analysis. (*Ibid*.) It was in that specific context—where propensity evidence cannot be excluded because the charged offense is a central issue in the trial—that Justice Corrigan's separate opinion inferred the trial court was required to engage in a section 352 analysis before deciding to instruct the jury on the proper use of section 1108 evidence. (*Villatoro*, at p. 1177 (conc. and dis. opn. of Corrigan, J.).) Nothing in her opinion, much less the majority opinion, suggests that a separate section 352 analysis must be conducted sua sponte before giving a CALCRIM No. 1191A instruction in a case (like this one) involving uncharged crimes.

Our conclusion is fully consistent with this court's recent decision in *Ellis, supra,* 105 Cal.App.5th 536, a case that also involved evidence of uncharged sexual offenses. There, the trial court made a pretrial ruling to admit evidence of certain uncharged crimes under section 1108 after conducting a section 352 analysis and finding that the probative value was not outweighed by its prejudicial effect. (*Ellis,* at p. 543.) On appeal, the defendant claimed the court erred by failing to conduct an additional section 352 analysis before instructing the jury with CALCRIM Nos. 1191A and 1191B, as required by *Villatoro*. We disagreed, ruling that once the trial court has conducted a proper section 352 analysis in deciding to admit evidence of uncharged offenses pursuant to section 1108, " '[N]othing in *Villatoro* indicates that [it] must conduct that analysis yet again before giving' CALCRIM Nos. 1191A and 1191B." (*Ellis,* at p. 544.)

8

Our holding here is merely a logical extension of *Ellis*. Although we have held that the trial court in this case had no sua sponte responsibility to conduct a section 352 analysis in deciding to admit the evidence of the Mexico incident (*ante*), Caratachea's counsel had the opportunity to insist that it do so. Instead, he elected to concede the admissibility of Lilly's testimony regarding the uncharged crime, asking only that the jury be instructed on its proper use. Caratachea does not claim ineffective assistance of counsel in regard to this tactical decision. *Ellis* holds that once the trial court has conducted a section 352 analysis in deciding to admit evidence of uncharged crimes, it need not repeat that analysis before instructing the jury regarding how to consider that evidence. We expand that holding only slightly to say that where a defendant has conceded the admissibility of uncharged crime evidence under section 1108, the trial court is not required on its own to engage in a section 352 analysis before the jury is instructed on the proper use of the concededly admissible evidence.[7]

## B. *Caratachea must be resentenced on the lewd act counts because the trial court mistakenly believed it lacked discretion to impose concurrent sentences.*

When sentencing Caratachea for his lewd act convictions, the trial court imposed a consecutive term of 15 years to life for each Penal Code section 288 count because the jury found true the allegations in Penal Code section 667.61, subdivisions (b), (c), and (e). The court agreed with the People and the probation officer that consecutive sentences were required by Penal Code sections 667.6, subdivision (d) and 667.67, subdivisions (b) and (i). These provisions, however, do not apply in this case because they require

---

[7] In light of our conclusion, we do not reach the parties' arguments concerning prejudice or the People's contention that these claims have been forfeited.

consecutive sentences when a defendant is convicted of violating Penal Code section 288, *subdivision (b)*, whereas Caratachea's lewd act convictions are all for violating Penal Code section 288, *subdivision (a)*. (See *id.,* §§ 667.6, subds. (d)(1) & (e)(5), 667.61, subd. (i).) The Attorney General concedes the error.

Neither Penal Code section 667.6 nor section 667.61 requires consecutive sentences for Caratachea's lewd act convictions, which means the trial court had discretion to impose concurrent sentences. (See *People v. Lopez* (2022) 76 Cal.App.5th 287, 291 ["Because [Pen. Code] section 667.61, subdivision (i), requires a trial court to impose consecutive sentences . . . namely, those listed in subdivision (c)(1) to (7) [Pen. Code former section 288a]—it does not require the court to impose consecutive sentences for other offenses in the statute—namely, subdivision (c)(8) [Pen. Code section 288, subdivision (a)]"].) Caratachea is entitled to relief on direct appeal because the record establishes that the court mistakenly believed it lacked this discretion. (*People v. Leon* (2016) 243 Cal.App.4th 1003, 1026–1027.) Accordingly, we remand this case for the limited purpose of resentencing Caratachea on these convictions. Should the court choose to impose any consecutive sentences on remand, it must state its reasons for doing so on the record. (Cal. Rules of Court, rule 4.406(b)(4).)

## DISPOSITION

The sentences on counts 4 through 23, 28 through 37, and 40 through 58 are vacated, and the superior court is directed to resentence Caratachea in a manner consistent with this opinion. Upon resentencing, the superior court shall forward an amended abstract to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


DATO, Acting P. J.

WE CONCUR:


DO, J.


BUCHANAN, J.

11